22-1365 Duran v. Budaj Good morning, Your Honors. My name is Michael Rowe and I represent the appellants in this case, Officers Boudet, Officer Sorant, Officer McNamee, and the City of Aurora. And at council table with me is Assistant City Attorney Gillian Paulson. She will not be presenting today. Having been sitting back there and listening to the previous argument, I'm sure the court is well aware that this case is about the difficulty of applying the traditional gram factors in the context of protest cases where officers are facing a collective threat from a group of people and then utilizing discreet uses of force that result in injury to those people. In this case, the traditional gram factors fall short because with respect to Officer Boudet, Officer Boudet is accused of striking Plaintiff Duran in the groin with a less lethal foam round. Was that a beanbag? No, that is not a beanbag either. This is the other one. So the two are Officer Boudet and Plaintiff Duran. Their situation involved a 40 millimeter foam round. Officer Sorant, Officer McNamee, and Plaintiff Packard involved a less lethal shotgun round. And with respect to the situation between Officer Boudet and Plaintiff Duran, I'm sorry, with multiple defendants and multiple plaintiffs, it's difficult to keep the names accurate. But with respect to that situation, at the time that Officer Boudet utilized less lethal rounds, you can see on the video that was submitted to the district court from Mr. Duran that there are a group of, they are on either side of an intersection, and there are a group of protesters that have moved obstacles into the middle of the Mr. Duran is struck, you can see several of those protesters moving out to handle a gas canister that has just landed right in front of them. You can also see and hear at the very time that Mr. Duran is struck, you can see a large firework explode near the police officers on the other side of the intersection. So in those circumstances, the record that is developed that was before the district court, which the district court made no real findings of, was... In what way did the district court not make findings? What's that? In what way did the district court not make findings? The totality of the circumstances that the individual officers were facing, so that their use of force could be reviewed as reasonable or not from their perspective, from the perspective of a reasonable officer on the scene. The district court... So you're asking us to sort of invoke an exception to our typical review posture here and make findings because the district court didn't make them? Yes. We are not challenging any of the facts as found by the district court. Okay, so one of the facts the district court found is that there was no threat. Is that... Do you agree that's a factual determination? With respect to... I would agree with you, Your Honor, with respect to Plaintiff Duran. The record evidence indicates that Plaintiff Duran was doing nothing to threaten the officers. However, it's critical that Plaintiff Duran was very near a group of protesters that was engaging the police... Okay, but no threat, you concede, no threat, Duran. From Duran. That's absolutely correct. The same no threat finding was made as to Mr. Packard, and that you dispute? That we dispute, Your Honor. So you agree it's factual determination, but you challenge it because you think it is blatantly contradicted by the record? Yes. Why? Because there are two video sources for the events immediately prior to and surrounding what occurred to Mr. Packard. One is... And if you'll just give me one moment, Your Honor. One is Exhibit 13. Exhibit 13 is a zoomed close-up clip of the intersection on video. I believe it is filmed by a bison. And the way that it was submitted to the court was it had a highlighted rectangle because it was submitted to the court for the purpose of demonstrating how far the gas canister that Mr. Packard kicked went toward the police. However, if you pay attention to the entirety of the video, you can see that there are other gas canisters that are being deployed in the immediate moment. You cannot tell where they are coming from. Well, they're not coming from Mr. Packard. No, they're not coming from Mr. Packard. But there are the attempts to characterize the contact between Mr. Packard and Officer McNamee and Mr. Duran and Mr. Boudet as an isolated incident between an officer and an individual is belied by that video evidence. These uses of force are occurring in the context of officers facing a collective threat from a large group of individuals. And if you look at that Exhibit 13 and if you look at Exhibit 17, which is Officer McNamee's body-worn camera, and you look at them in conjunction, you can see that despite the characterizations of the plaintiffs that this protest had dissipated at that point, that there was no threat to the officers, that is belied by the video. There are projectiles being thrown at the officers. So when we're assessing threat to the officers, you're asking us to look at a collective threat. Absolutely. And what supports that approach? Because this is about individual use of force on Mr. Packard and Mr. Duran. So what do you have? Can you develop that argument a little bit and tell me what supports it? That when we're assessing threat, we're looking at it in this broad way. I think it's necessary and it's dictated by the fact that reasonableness is the touchstone of the Fourth Amendment. And any reasonableness analysis of an officer's use of force requires that the use of force be looked at from a totality of the circumstances that was facing a reasonable officer in the defendant officer's position at the time. You cannot do that without directly addressing the evidence that was before the district court in this case. And you cannot assess clearly established law without appealing to that totality of the circumstances from the perspective of a reasonable officer on the scene. And at the time, the video evidence in this case demonstrates that those officers were under multiple threats from a number of individuals and that this was an ongoing issue. So it was virtually impossible for officers to determine a specific threat by a specific person at a specific time. But we still need threat from someone. Just because you have a large group of people, whatever they're doing, we have to have some evidence that they were acting in a threatening way so that the officer responds appropriately. And that evidence that Your Honor is talking about is contained in the videos that were submitted in connection with the summary judgment briefing. So the error that you're alleging on the facts is that the district court just did not correctly consider the omitted facts. Correct. That is correct. What do we do with Fogarty and Buck? Fogarty and Buck. Well, that's a good question, Your Honor. Well, you knew it was coming, I hope. And Your Honor, I expected Judge Briscoe to be all over me about the factual issues. It might happen yet. It may happen yet. Yes, I understand. With respect to Fogarty and Buck, Fogarty and Buck are simply a clear example of how limited the application of the traditional gram factors are in the context of protest cases. Both Buck and Fogarty are easily distinguishable from the totality of the circumstances that were facing a reasonable officer on the scene during these protests. Could you talk about that point as it applies individually to each? Certainly. So as to Mr. Duran and to Mr. Packard. I cannot talk about Mr. Duran without bringing up whether or not there was a seizure. So a seizure requires... Let's assume there was. Okay. Let's assume there was a seizure. All right. Then neither Fogarty nor Buck apply to these processes because the position of Mr. Duran with respect to the group of individuals that was actually engaging in threatening behavior, unlawful behavior at the time, there is no factual resemblance to either of the plaintiffs in Buck or Fogarty. In Buck, for example, and they were not part of this collective threat that I have mentioned. So in Buck, the plaintiff was part of a drum circle, I believe, that may have perhaps been marching along. That is not what we had here. A drum circle is not a threat. So Mr. Duran had no drum. But what was he doing? He wasn't doing anything, right, that was threatening. He was adjacent to... He was filming the goings-on at the time. Okay. Yes. If you look at his video, he's very near to these individuals that have pulled some obstructions on him. He was near, but he himself, you agree, was similar to Mr. Fogarty, not taking any action. Would you agree? To that extent, yes. I would agree that he was not taking any action that was threatening to the police. And I think we... Well, you're suggesting he was just collateral damage? Yes, it was incidental. The strike to Mr. Duran, the reasonable... Incidental or accidental? I thought accident was... Accidental. Accidental? Yes. Okay, so I was not aware that that was one of your positions in the case, that he was hit by accident? The facts... The universe of facts that was presented to the district court calls for a reasonable inference that yes, he was struck accidentally. Did you make that finding? Because it seems to me that the district court didn't read your argument that way. That's fair. I don't think that the district court even considered it in that way. Did you raise it? Yes. We did. And I noticed that I have one minute left. I would like to reserve that for rebuttal. Sure. There's no further questions. Good morning. May it please the court. In 2008, this court published two opinions, Fogarty and Buck, holding that an officer who shoots a protester with a less lethal projectile violates the Fourth Amendment for excessive use of force when the protester poses no threat, has committed no serious crime, and is not evading arrest. In both of those cases, this court denied qualified immunity both to the shooter and the supervisor who ordered the use of force. Fogarty and Buck are controlling. They involve the same factual context, large-scale protest. They involve the same type of force, less lethal munitions. The question that I have is whether those cases apply equally to you and to your colleagues, clients. Yes, they do, Your Honor. Why is that? So we believe that—well, the facts of Fogarty I think are the closest to Mr. Buck. So in Fogarty, this court held that there were three examples of excessive force that Mr. Fogarty alleged. The first was the hyperflexing of the arm. The second was the exposure to tear gas. The third was a shot by a single projectile from a rifle-fired weapon. All of those, the court found, were unreasonable under the circumstances because all three Graham factors were absent. Those are precisely the factual findings made by the district court, carefully reviewing the record at summary judgment, trying all inferences in favor of the non-moving party, our clients. He found that Mr. Packard was not committing any crime. There's no dispute. He found as a factual matter that Mr. Packard posed no threat. Under Finch v. Rapp, that is a factual finding that binds this court on interlocutory appeal under the limited jurisdiction of Johnson and Baird. But what do we do with opposing counsel's argument that we're to look at the folks in the background, the maddening crowd there that's protesting or doing whatever they're doing? Doesn't that become part of the circumstance? Two things, Your Honor. First, the reasonableness of the use of force on Mr. Packard was not argued below. That argument is forfeited for appeal. Secondly, the collective action of others is inappropriate with respect to Mr. Packard, who the district court found was individually targeted. Officer McNamee raised his gun, aimed at Mr. Packard at the instruction of Sergeant Surrant. If they start kicking that shit, go ahead and freaking hit him. Eleven seconds later, he pulled the trigger, hit Mr. Packard in the head, fractured his skull, broke his neck, caused bleeding in his brain, left him immobile in the gun. Well, often you're going to have, if somebody shoots somebody, you have the one person that's shot, but then you have the whole group of other people that are behind that person. So we're just to sort of blank those folks out in whatever they're doing? Again, when the use of force was directed to an individual for an individual act, the question under Graham is— And that's the tricky part, for an individual act. You see what I'm saying? Because you have this crowd of people protesting. So if you take all the facts in the light most favorable— So I think the posture of this case helped that it arises under Rule 56. So if we take all of the facts in the light most favorable to Mr. Packard, if we draw all inferences in his favor, and the district court made specific findings with respect to the threat category, Graham Factor No. 2, and found that he posed no threat— What do we do with the kicking of the canister back? That fact is not present in the cases that you are relying on for the clearly established law. Two reasons, Your Honor. First, in order for a distinction to be important, it has to be material. For this court to find that poverty is not clearly established law, you would have to find that kicking the canister did pose a threat. That is the only circumstance in which it would be material. That's contrary to the district court's finding below, that no reasonable officer could have concluded that Mr. Packard posed an immediate threat to the safety of officers. So would you contend that—so if I understand your argument, because of the materiality component as you've described it, essentially you're saying that your client and your colleague's client are precisely similarly situated in light of the district court's finding on threat. Absolutely, Your Honor. What evidence do you have that they actually targeted your client as opposed to shooting into the crowd, if you will? The district court made four findings to that effect. They've got to be based on the facts that were reduced. Correct. You can't make them up. And the court's findings are what a reasonable juror could— No, not a reasonable juror. Undisputed facts. What were they that showed your client was earmarked by this officer and shot him in the head? I understand, Your Honor. With a bean bag. Sergeant Sarant, 11 seconds before my client was shot, instructed the officers down the line. You can hear it on Officer McNamee's body-worn camera. I assure that. Correct. Eleven seconds later, we have the triangulated video that shows Mr. Packard kicking the canister away from the crowd and towards the middle of the street. Simultaneously with that, we have the body-worn camera of Officer McNamee firing three shotgun rounds in Mr. Packard's direction. We have video of Mr. Packard immediately falling to the ground, lying unconscious, and we have statements by Officer McNamee that he used his bean bag shotgun to target those who were interfering with gas canisters. That is more than a reasonable inference that our client, Mr. Packard, was specifically targeted by Officer McNamee under the circumstances. And is that because he kicked the canister? Did the video show him kicking the canister? It did, Your Honor. Okay. The second reason, I want to get back to Your Honor's question about the potentially distinguishing characteristic, the second is that a very similar argument was made in Fogarty itself. In that case, the officers argued that the protesters, Mr. Fogarty as well as some in Mr. Buck, were inciting the crowd, and in fact that endangered the safety of the officers. This court, under the posture of interlocutory appeal, rejected that argument, holding that under the district court's view of the evidence which binds this court, Fogarty's behavior presented no immediate threat to anyone's physical safety. That is almost verbatim the statement made by Judge Jackson below. He granted their motion for summary judgment in some respects. He denied it in others. He carefully walked through this record. Under the limited jurisdiction of Johnson and Behrens, those facts are accepted as true. There is nothing to distinguish this case from Fogarty and Buck. I see that I'm almost at my half point time. I'll turn it over to Ms. Wong. We ask that this court affirm the district court with respect to Mr. Packard. Thank you, counsel. Thank you. May it please the court, my name is Elizabeth Wong and I represent Jonathan Duran. In this appeal, this interlocutory appeal from a denial of qualified immunity, the court's jurisdiction is limited to purely legal issues. The appellant's entire argument turns on disputes of fact. They dispute the facts that the district court found a reasonable jury could find. They dispute whether or not Officer Boudet shot Duran intentionally or accidentally. It's contrary to the district court's findings. It is completely unreviewable in this appeal. And they dispute the facts of Fogarty and Buck. This court should dismiss this appeal for lack of jurisdiction because the court has said many times as recently as this year in Willis v. Johnson, the case decided in February of this year, Ralston v. Cannon, numerous cases, this court has said that appellants in this posture cannot contest the facts. And when they contest the facts, it deprives the court of jurisdiction. Boudet has not argued that if he intentionally shot Duran, he would be entitled to qualified immunity. The court would have jurisdiction over that question. It does not have jurisdiction over their challenge to the facts, which is their assertion that perhaps Officer Boudet shot Duran unintentionally or accidentally. My understanding was that the appellant is asking us to take an off-ramp from our typical constraining review because of the absence of fact-finding in the district court on material issues that are in the video. They're wrong. The district court made extensive factual findings at page 6 of its opinion, appendix 6. It talked about the evidence that it reviewed very carefully, showing that a reasonable jury could find that the officer who shot Mr. Duran intentionally was Officer Boudet. It also, on pages 12 and 15 of the appendix, talked about other evidence that supported what it found a reasonable jury could find. Let's be clear. This court, on numerous occasions, has reviewed cases involving video where officers say that the video shows this and the video shows that. This court did that in Finch v. Rapp. It did it in Foote v. Spiegel. And yet the exception to the exception, what I'm saying is an exception to exception, is they are posturing an exception to exception. The rule is that you only have jurisdiction to review final orders. The exception is an interlocutory appeal on denial of qualified immunity. They're pushing the exception to the exception, which is that the video, the district court's findings are blatantly contradicted or visible fiction, according to the video. And that's the problem with videos, isn't it? That is the problem. We are very uncomfortable. I've been very uncomfortable for many years because it places appellate judges in the position of being front-line fact-finders. We can see the video. We wonder if the district court sees it the same way we see it, and it's a huge temptation to revisit the facts. I mean, I understand Pellett's argument. I mean, these are good arguments. We can see the other people in the video. Absolutely. And what I will say is that the district court very clearly reviewed the video and all of the other evidence in the record, including testimony from Mr. Duran and other protesters, that those were not fireworks that they say are fireworks in the video. Those were, in fact, police explosives. The bottom line here is that when the appellants contest the facts, and they do it in two ways, they contest Fogarty, they contest what the facts there showed, whether it's clearly established, whether it's similar enough to this case, and they contest the facts that the district court found. When the appellant contests the facts, this court has no jurisdiction and must dismiss the appeal for lack of jurisdiction. Was there any motion for reconsideration to the district court after the ruling for counsel to remind the court that there were many facts that were omitted and not considered by the court? No. They did not file any kind of motion for reconsideration, and it's very clear that the district court considered all the evidence and determined what a reasonable jury could find, and that is the strength of the district court's trial judges as compared to appellate courts. And let me make one comment about this assertion that Graham v. Conner is not the relevant legal standard to apply here. That's just not the law. Not only did they not argue that below, there is no law supporting that, and as the court knows, in Fogarty and Buck, a protest case, this court applied the Graham v. Conner factors. And so when you look at the facts of Fogarty, a guy who was standing on the steps of a bookstore and was shot one time with a rifle-powered projectile while there's lots of other protesters near him, while the officers are trying to disperse him, those facts are indistinguishable from the facts of this case. Actually, unless the court has any other questions, I have nothing further. May I interrupt? Yes. In my limited time, I would like to address the question from Judge Kelly regarding what evidence there is that either of their clients were specifically targeted. The answer to that question is there is none, other than the specific existence of the injury. That is the only evidence in the record, and that goes directly to our point that the district judge did not consider the evidence from the perspective of a reasonable officer on the scene and make fact findings of a totality of the circumstances. Well, we have the facts, I think, that are undisputed, that we have the sergeant saying, if anybody kicks the canister, basically shoot them. That is correct. And this and one of our plaintiffs here kicked the canister and was shot. That is correct. The question with Sergeant Sorant, who gave that order, the question with respect to the supervisor is, was it clearly established that his direction was unlawful at the time? And the answer to that question is no. Well, I'm talking about the targeting. When the sergeant says, target these people if they do X, and they do X and they're shot, they're targeted, aren't they? Yes, but there is a subtle distinction with respect to Plaintiff Packard. The issue with Plaintiff Packard from the defendant's perspective is not that he was struck with a less lethal round generally, but that he was struck in the head. And there is ample evidence in the record that Aurora police officers specifically  because of the danger it poses with less lethal weaponry. And in that circumstance, and the second thing, I understand that I'm open, but if I could just make one more comment, that whether or not these plaintiffs were targeted specifically or targeted on specific parts of their body are inferences. They are not facts. And inferences in a totality of the circumstances Fourth Amendment analysis have to be reasonable, and they have to be based on record facts. And the district court judge did not make any of those findings based on the record in this case. Thank you. Thank you, counsel. Thank you, counsel, for your helpful briefing and argument. Appreciate it. The case will be submitted and we'll...